IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KIMBERLY T.[1]**,

        Plaintiff,

    v.

**KILOLO KIJAKAZI,** Acting Commissioner of Social Security,

        Defendant.

Case No. 3:20-cv-1543-SI

**OPINION AND ORDER**

Bruce W. Brewer, LAW OFFICES OF BRUCE W. BREWER PC, PO Box 421, West Linn, OR 97068. Of Attorney for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Lars J. Nelson, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Kimberly T. seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying her application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order also uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (Act). For the reasons below, the Court reverses the decision of the administrative law judge (ALJ).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB and SSI on October 31, 2017, alleging disability beginning on September 1, 2016. AR 74-75. Plaintiff's date of birth is December 22, 1970, and she was 45 years old as of the alleged disability onset date. AR 75. The agency denied her claim both initially and upon reconsideration, and Plaintiff requested a hearing. AR 149, 160, 167. Plaintiff appeared for a hearing before an ALJ in September 2019. AR 27. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 13-22. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 1. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

PAGE 3 – OPINION AND ORDER

2.         Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.         Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.         Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.         Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

    The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

As a preliminary step for Plaintiff's claim, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2018. AR 15. The ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2016. *Id.* At step two, the ALJ determined that Plaintiff suffered medically determinable severe impairments of diabetes mellitus, peripheral neuropathy, fibromyalgia, vision impairment, hepatitis C, asthma, right median mononeuropathy, bursitis of the left trochanteric bursa, and incontinence. *Id.* At step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is limited standing and/or walking four hours and sitting six hours in an eight-hour workday, with normal breaks. The claimant is limited to no climbing of ladders, ropes, or scaffolds. She is limited to occasional climbing of ramps or stairs. She is limited to occasional balancing, crouching, and crawling. She is

PAGE 5 – OPINION AND ORDER

> limited to frequent bilateral handling and fingering. She must avoid concentrated exposure to extreme cold and excessive vibration. She must avoid even moderate exposure to fumes, odors, dust, gases, and poorly ventilated areas. She must avoid workplace hazards such as unprotected heights and operational control of moving machinery. A bathroom must be on premises.

AR 17. Based on these limitations, at step four, the ALJ found that Plaintiff could perform her past relevant work. AR 20. The ALJ made an alternative finding at step five and found that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including final assembler and telemarketer. AR 21. The ALJ thus concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ lacked the authority to adjudicate her case and that the ALJ erred by discounting her symptom testimony, failing to discuss the testimony of Plaintiff's father, failing to give effect to a prior ALJ's decision, finding Plaintiff could perform her past relevant work, failing to specify Plaintiff's transferable work skills, and finding that Plaintiff could perform the work of a final assembler. The Court addresses each alleged error in turn.

### A. Constitutional Authority

Plaintiff argues the ALJ lacked constitutional authority to decide her case. Plaintiff contends that because the Social Security Administration is led by a single-member head, the for-cause restriction on removal of the Commissioner is unconstitutional under *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020). The Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), however, indicates that the removal provision of the Act only applies to the Commissioner and not an Acting Commissioner. In *Collins*, the Supreme Court held that the removal provision under the Recovery Act only applied to the Director of the Federal Housing and Finance Agency, not the Acting Director. *Id.* at 1783. The Supreme Court

explained that because the removal provision only referred to the "Director" and not the "Acting Director" and other provisions of the statute referred to the "Acting Director," the removal provision did not apply to the Acting Director. *Id.*

Here, the ALJ adjudicated Plaintiff's claim when Andrew Saul served as Acting Commissioner of the Social Security Administration. Like the statute in *Collins*, the removal provision of the Act only refers to the "Commissioner" and not the "Acting Commissioner." 42 U.S.C. § 902(a)(3). Also like the statute in *Collins*, the Act elsewhere refers to the "Acting Commissioner," indicating that an Acting Commissioner is removable at-will and not subject to the removal provision. *See id.* § 902(b)(4). Thus, even if the Act's removal provision is unconstitutional, it did not affect Plaintiff's claim.

## B. Plaintiff's Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

PAGE 7 – OPINION AND ORDER

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, an ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom

testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [petitioner's] testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

The ALJ discounted Plaintiff's testimony due to conflicting daily activities, routine and conservative treatment, and a lack of supporting objective medical evidence. AR 19-20. Plaintiff argues that the ALJ failed to link specific evidence to specific testimony and thus committed harmful error under *Brown-Hunter*. Defendant concedes that the ALJ erroneously rejected Plaintiff's testimony based on conservative treatment but argues that the ALJ properly rejected Plaintiff's testimony based on her daily activities.

The Court agrees that the ALJ failed to link Plaintiff's daily activities to specific contradictory testimony. The ALJ explained that Plaintiff's ability to "perform most personal care, prepare simple meals, do housework, drive a vehicle, shop in stores, and take care of her pets" were daily activities "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 19-20. This explanation does not link Plaintiff's daily activities to specific testimony and instead only generally refers to Plaintiff's symptom complaints and limitations. Defendant argues that these daily activities conflict with Plaintiff's statement that she "has difficulty walking and sleeping, and has vision loss due to diabetes"

identified earlier in the ALJ's decision. *See* AR 18. Even assuming the ALJ linked that testimony to Plaintiff's daily activities, Plaintiff's daily activities do not conflict with a difficulty in walking and sleeping and vision loss. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) ("[A] claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (stating that the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"). Thus, the ALJ erred by discounting Plaintiff's symptom testimony based on her daily activities.

The ALJ also discounted Plaintiff's symptom testimony based on a lack of supporting medical evidence. That reason alone, however, is insufficient to discount symptom testimony. *See Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). The Court must therefore determine whether discounting Plaintiff's symptom testimony was harmful error.

Plaintiff testified to significant limitations in her ability to use her hands. Specifically, Plaintiff testified that she has difficulty carrying things (AR 32, 40), cannot write with a pencil (AR 33), has a tingling sensation in her right and left hands such that her hands cannot be touched (AR 35), cannot use a keyboard (AR 36), cannot properly use a cell phone (AR 36),

y
z

cannot independently use the restroom (AR 40), and sometimes cannot bathe herself (AR 42-43). This testimony indicates that Plaintiff's handling and fingering limitations are greater than the limitation to "frequent" handling and fingering in her RFC. Further, the VE testified that if Plaintiff were limited to occasional handling and fingering (as opposed to frequent), the jobs he identified would not be available to Plaintiff. AR 50. The ALJ therefore committed harmful error by discounting Plaintiff's symptom testimony because the ALJ did not incorporate Plaintiff's handling and fingering limitations based on that testimony into the RFC and the jobs identified by the VE would not be available to a claimant if she was limited to occasional handling and fingering.

## C.  Lay Witness Testimony

Plaintiff argues the ALJ erred by failing to provide a reason for discounting the lay witness statement of Plaintiff's father, Gary T. Defendant responds that under new regulations, an ALJ need not give germane reasons for discounting lay witness testimony and that any error here is harmless because Gary's testimony is similar to Plaintiff's and is contradicted by past administrative findings of state agency consultants Drs. Peter Bernardo and William Nisbet.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. However, "a lack of support from the 'overall medical evidence' is [] not a proper basis for disregarding [lay

PAGE 12 – OPINION AND ORDER

witness] observations. The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citations omitted) (citing cases and concluding: "A lack of support from medical records is not a germane reason to give 'little weight' to those observations.")).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117. When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff filed her application for benefits on October 31, 2017. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate evidence from medical sources, which includes a clarification on how an ALJ evaluates nonmedical lay testimony. *See* 20 C.F.R. § 404.1520c(d). Subsection (d) of the new regulations provides: "We are not required to articulate how we considered evidence from nonmedical

sources using the requirements in paragraphs (a)-(c) in this section." *Id.* Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. 20 C.F.R. § 404.1520c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet addressed whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have suggested that the new regulations may remove the ALJ's obligation to address lay testimony altogether, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) ("[T]here is an argument that the ALJ is no longer required to provide 'arguably germane reasons' for disregarding such statements, as the Ninth Circuit has traditionally required."). On the Court's reading, however, the new regulations do not appear to do away with the ALJ's obligation to address lay witness testimony altogether. Instead, it only clarifies that the ALJ does not need to use the new standards for evaluating medical opinion evidence when evaluating non-medical source lay testimony. *See* 20 C.F.R. § 404.1520c(d). Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony. Further, courts have continued to conclude under the new regulations that an ALJ's failure to address lay testimony is error. *See, e.g.*, *Paulette N. v. Saul*, 2021 WL 4902421, at *10 (N.D. Cal. Oct. 21, 2021) (stating that the ALJ's failure to discuss the plaintiff's daughter's testimony was harmful error); *Christopher C. v. Kijakazi*, 2021 WL 4061557, at *8 (D. Or. Sept. 7, 2021) (stating that the ALJ's failure to address the plaintiff's father's testimony was harmful error); *Kay J. v. Comm'r of Soc. Sec.*, 2021

WL 4087833, at *3 (W.D. Wash. July 7, 2021) ("The Court agrees the ALJ erred by failing to address the lay witness testimony.").

The ALJ did not address Gary's third-party function report and therefore erred by failing to give a germane reason to discount Gary's testimony. The Commissioner argues that this error was harmless, however, because Gary's testimony conflicts with the more reliable medical evidence of the opinions of Drs. Bernardo and Nisbet and because Gary's testimony is similar to the properly discounted testimony of Plaintiff. The Court has found that the ALJ erred in discounting Plaintiff's testimony, so the latter argument is without merit.

For the Commissioner's first argument, the Commissioner offers no specific argument or explanation of which part of Gary's testimony conflicts with which portion of the medical opinions of Drs. Bernardo and Nisbet.[2] "[W]hile inconsistency with the medical record may be germane to lay witness testimony, simply stating the testimony is inconsistent, without more, does not provide sufficient information for a reviewing court to assess the adequacy of the ALJ's finding." *Helms Eddy v. Colvin*, 2016 WL 11383833, at *7 (D. Or. Sept. 1, 2016), *report and recommendation adopted in part, rejected in part on other grounds*, 2016 WL 7013467 (D. Or. Nov. 28, 2016). The Court declines to scour the record to find the purported contradictions. Further, the Commissioner appears to be arguing that an ALJ ignoring lay witness testimony is harmless so long as "a medical source opinion provides that a Plaintiff can work," and "[s]uch a rule would entirely obviate the purpose of lay witness testimony." *Dustin B. v. Kijakazi*, 2021

---

[2] The Commissioner's argument on this point is: "Here the lay statements (Tr. 290, 295) are contradicted by the unchallenged past administrative findings of Drs. Bernardo and Nisbet (Tr. 81-83, 93-95, 106-08, 119-21), whose opinions are more reliable medical evidence." ECF 21 at 21.

PAGE 15 – OPINION AND ORDER

WL 3418570, at *10 (D. Or. Aug. 5, 2021). Thus, the Court does not accept the Commissioner's argument that the ALJ's error was harmless.

### D. Prior RFC Determination

Plaintiff argues that the ALJ in this case, Elizabeth Watson, erred by failing to give effect to a determination made by a prior ALJ, Vadim Mozrsky, that Plaintiff was limited to sedentary work. When a claimant has previously been found not disabled and the claimant files a subsequent claim for a new period of alleged disability, the ALJ will presume the claimant's continuing nondisability unless the claimant shows there are "changed circumstances" affecting the unadjudicated period of alleged disability. Social Security Acquiescence Ruling (SSAR) 97-4(9), *available at* 1997 WL 742758, at *3; *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). If the claimant rebuts the presumption, the ALJ must give effect to certain findings including the prior ALJ's determination of the claimant's RFC "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." SSAR) 97-4(9), *available at* 1997 WL 742758, at *3.

ALJ Mozrsky's decision is dated August 31, 2016, and he considered Plaintiff's claim of disability with an alleged onset date of December 31, 2011. AR 127. ALJ Watson considered Plaintiff's claim of disability with an alleged onset date of September 1, 2016. AR 13. ALJ Watson therefore addressed a period of alleged disability not adjudicated by ALJ Mozrsky, but under *Chavez*, was obligated to give effect to ALJ Mozrsky's determination of Plaintiff's RFC unless new evidence or a change in law affected that determination.

ALJ Watson limited Plaintiff to light work, whereas ALJ Mozyrsky had limited Plaintiff to sedentary work. AR 17, 133. Putting aside the fact that ALJ Watson erred with regard to Plaintiff's and the lay witness testimony and failed to incorporate that testimony into Plaintiff's

PAGE 16 – OPINION AND ORDER

RFC, any error ALJ Watson made in failing to give effect to ALJ Mozyrsky's limitation to sedentary work is harmless because at step five, the ALJ identified only sedentary jobs. *See Molina*, 674 F.3d at 1115 (stating that an error is harmless if it is "inconsequential to the ultimate nondisability determination" (quoting *Carmickle*, 533 F.3d at 1162)).

### E. Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ erroneously concluded that Plaintiff could perform her past relevant work. Defendant responds that any error in finding Plaintiff could perform past relevant work is harmless because the ALJ made an alternative finding at step five. The Court agrees. As explained below, the ALJ did not commit harmful error in finding that Plaintiff could perform the work of a final assembler or telemarketer. Thus, had the ALJ properly discounted Plaintiff's testimony, the ALJ would have committed no harmful error at step four because the ALJ made an adequate alternative finding at step five.

### F. Step Five Finding

Plaintiff argues that because telemarketer is a semi-skilled job, the ALJ erred by failing to identify Plaintiff's transferable skills under Social Security Ruling (SSR) 82-41. *See* SSR 82-41, *available at* 1982 WL 31389. Defendant responds that SSR 82-41 requires the ALJ to identify a claimant's transferable skills only when transferable skills are dispositive of a finding of disability under the Medical-Vocational Guidelines (the Grids). Defendant is correct that under SSR 82-41, an ALJ must make a finding of the claimant's transferable skills when that issue is dispositive of a finding of disability under the Grids, but the ALJ must also do so when the only jobs identified at step five based on VE testimony are semi-skilled or skilled. *See Barnes v. Berryhill*, 895 F.3d 702, 707 (9th Cir. 2018) (holding that the ALJ erred in failing to identify the plaintiff's transferrable skills under SSR 82-41 because the only jobs identified at step five were semi-skilled).

Here, transferability of skills was not dispositive of the ALJ's finding of no disability because the ALJ identified an unskilled job available to Plaintiff in significant numbers in the national economy. The ALJ found that Plaintiff could perform the work of a final assembler, which has a specific vocational preparation (SVP) level of two and therefore corresponds to unskilled work. *See* SSR 00-4p, *available at* 2000 WL 1898704, at *3 (stating that SVP levels one and two correspond to unskilled work). The ALJ further found that 15,000 final assembler jobs are available in the national economy, which constitutes a significant number of jobs. *See Christine P. v. Comm'r, Soc. Sec. Admin.*, 2021 WL 1649887, at *4 (D. Or. Apr. 27, 2021) (concluding that 14,900 jobs is a significant number); *Mark M. v. Comm'r*, 2020 WL 7695848, at *4 (D. Or. Dec. 28, 2020) (concluding that 14,355 jobs is a significant number); *Davis v. Comm'r*, 2018 WL1779341, at *6 (E.D. Cal. Apr. 12, 2018) (concluding that 15,000 jobs is a significant number), *overruled on other grounds*, 846 F. App'x 549 (9th Cir. 2021); *Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (concluding 12,300 jobs is a significant number); *Peck v. Colvin*, 2013 WL 3121280, at *5 (C.D. Cal. June 19, 2013) (concluding that 14,000 jobs is a significant number).

Plaintiff further argues that substantial evidence does not support the ALJ's finding that Plaintiff could perform the work of a final assembler because she believes that based on the DOT's description of a final assembler, the job would require more than frequent handling and fingering. The ALJ, however, was entitled to rely on the DOT's notation that a final assembler requires only frequent handling and fingering. *See* DOT 713.687-018, *available at* 1991 WL 679271 (stating that a final assembler requires handling and fingering "frequently"). Thus, had the ALJ not erred in discounting Plaintiff's and the lay witness testimony and formulating

the RFC, any error in failing to identify Plaintiff's transferable work skills and concluding she could perform the work of a final assembler would have been harmless.

**G. Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775 F.3d at 1099-1100. The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Here, there are outstanding ambiguities to be resolved with respect to Plaintiff's RFC. The Court remands for further proceedings so that the ALJ can properly evaluate Plaintiff's symptom testimony and the lay witness testimony, reevaluate Plaintiff's RFC, and continue to step four and five based on any revised RFC.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge